UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION | Case No. ___1:20-CV-01032___ |
| Plaintiff, | |
| | **STIPULATED ORDER FOR** |
| v. | **PERMANENT INJUNCTION AND** |
| | **MONETARY JUDGMENT** |
| REVENUEWIRE, INC., also dba SafeCart, a corporation; and | |
| ROBERTA LEACH, individually and as an officer of RevenueWire, | |
| Defendants. | |

Plaintiff the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for permanent injunction and other equitable relief in this matter pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). Defendants have waived service of the summons and the Complaint. The Commission and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.      This Court has jurisdiction over this matter.

1

2.      The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of the Telemarketing Sales Rule, ("TSR") 16 C.F.R. Part 310, and Section 5 of the FTC Act, 15 U.S.C. § 45.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.   Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.      "**ACH Debit**" means any completed or attempted debit to a Person's account at a financial institution that is processed electronically through the Automated Clearing House Network ("ACH Network").

B.      "**ACH Transaction**" means any transaction involving a Person's account at a financial institution that is processed electronically through the ACH Network.

C.      "**Acquirer**" means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system ( e.g. VISA, MasterCard, American Express, and Discover) to

authorize Merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

D.      "**Chargeback"** means a procedure whereby an issuing bank or other financial institution charges all or part of an amount of a Person's credit or debit card transaction back to the Acquirer or merchant bank.

E.      "**Chargeback Rate**" means the proportion (expressed as a percentage) of chargebacks out of the total number of attempted credit or debit card sales transactions.

F.      "**Client**" means any Person (a) who obtains, directly or indirectly, from any Defendant a Merchant Account, (b) to whom any Defendant provides any Payment Processing services; or (c) to whom any Defendant is an ISO.

G.      "**Corporate Defendants**" means RevenueWire, Inc., and its successors and assigns including but not limited to PayMotion, Inc.

H.      "**Credit Card Sales Draft**" means any record or evidence of a credit card transaction.

I.      "**Credit Card System**" means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

J.      "**Defendants**" mean the Individual Defendant and the Corporate Defendants individually, collectively, or in any combination.

K.      "**High Risk Client**" means any Client that (a) engages in outbound Telemarketing; (b) markets a Technical Support Product or Service; (c) engages in Upselling or (d) has previously been named in a complaint, settlement or assurance of voluntary compliance involving the Federal Trade Commission or a state attorney general in a case or matter involving fraud, unfair or deceptive practices, including but not limited to Section 5 of the FTC Act, 15 U.S.C. §

45 and the Telemarketing Sales Rule, or a violation of any other state or federal consumer protection law, and where the complaint, settlement or assurance of voluntary compliance is available, viewable or accessible through a search of at least one major Internet search engine selected by Defendants.

L.      "**Independent Sales Organization" or "ISO**" means any Person or entity that (a) enters into an ISO agreement or contract with a Payment Processor, Acquirer or financial institution to sell or market Payment Processing services to a Merchant; (b) matches, arranges for, or refers Merchants to a Payment Processor or Acquirer for Payment Processing services, or that matches, arranges for, or refers a Payment Processor or Acquirer to Merchants for Payment Processing services; or (c) is registered as an ISO or merchant service provider ("MSP") with VISA, MasterCard, or any credit card association.

M.      "**Individual Defendant**" means Roberta Leach.

N.      "**Merchant**" means a Person who is authorized under a written contract with an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

O.      "**Merchant Account**" means any account with an Acquirer or other financial institution, service provider, Payment Processor, ISO, payment facilitator, or other entity that enables an individual, a business, or other organization to accept payments of any kind.

P.      "**Merchant Agreement**" means a written contract between a Merchant and an Acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

Q.      "**Payment Laundering**" means:   Except as expressly permitted by the applicable Credit Card System :  (a) Presenting or depositing into, or causing or allowing another to present or deposit into, the credit card system for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; (b) Employing, soliciting, or otherwise causing or allowing a Merchant, or an employee, representative, or agent of a Merchant, to present to or deposit into the Credit Card System for payment, a Credit Card Sales Draft generated by a transaction that is not the result of a credit card transaction between the cardholder and the Merchant; or (c) Obtaining access to the Credit Card System through the use of a business relationship or an affiliation with a Merchant, when such access is not authorized by a Merchant Agreement or the applicable Credit Card System.

R.      "**Payment Processing**" means transmitting sales transaction data on behalf of a Merchant or providing a Person, directly or indirectly, with the means used to charge or debit accounts through the use of any payment method or mechanism, including, but not limited to, credit cards, debit cards, prepaid cards, stored value cards, ACH Debits, and Remotely Created Payment Orders.   Whether accomplished through the use of software or otherwise, Payment Processing includes, among other things:   (a) reviewing and approving Merchant applications for payment processing services;   (b) transmitting sales transaction data or providing the means to transmit sales transaction data from Merchants to Acquirers, Payment Processors, ISOs, or other financial institutions; (c) clearing, settling, or distributing proceeds of sales transactions from acquiring banks or financial institutions to Merchants; or (d) processing Chargebacks or returned Remotely Created Payment Orders or ACH Transactions.

S.      "**Payment Processor**" means any Person providing Payment Processing services in connection with another Person's sale of goods or services, or in connection with any charitable donation.

T.      "**Person**" means any natural person or any entity, corporation, partnership, or association of persons.

U.      "**Refund**" means a transaction whereby a consumer contacts the Seller, Telemarketer or Payment Processor directly and money is returned to the consumer, or a sale or charge is reversed or cancelled;

V.      "**Refund Rates**" means the proportion (expressed as a percentage) of Refunds out of the total number of credit or debit card sales transactions.

W.      "**Remotely Created Payment Order**" means a payment instruction or order, whether created in electronic or paper format, drawn on a payor's financial account that is initiated or created by the payee, and which is deposited into or cleared through the check clearing system. For purposes of this definition, an account includes any financial account or credit or other arrangement that allows checks, payment instructions, or orders to be drawn against it that are payable by, through, or at a bank.

X.      "**Sales Agent**" means a Person that matches, arranges, or refers prospective Clients or Clients to a Payment Processor or ISO for Payment Processing, but does not hold any contractual liability in the event of losses related to the Payment Processing activities conducted by or on behalf of Clients.   As such, a Sales Agent may be involved in recommending a particular Payment Processor or ISO to a prospective Client, forwarding to the Payment Processor or ISO a prospective Client's or Client's merchant application, or negotiating rates and fees charged by a

6

Payment Processor or ISO, but a Sales Agent may not be involved in any Payment Processing and may not act as an ISO.

Y.     **"Seller"** means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

Z.     "**Technical Support Product or Service**" means any software or service marketed to repair, maintain or improve a computer's performance or security, including registry cleaners, anti-virus programs and computer or software diagnostic services without regard to whether the service is being offered by persons communicating by an inbound or outbound telephone call, online or in-person.

AA.     "**Telemarketer**" means any person who, in connection with Telemarketing, initiates or receives telephone calls to or from a customer or donor.

BB.     "**Telemarketing**" means any plan, program or campaign which is conducted to induce the purchase of goods or sevices or a charitable contribution, by use of one or more telephones and which involves more than one interstate call.

CC.     "**Telemarketing Sales Rule**" or "**TSR**" means the Telemarketing Sales Rule, 16 C.F.R. Part 310.

DD.     "**Total Return Rate**" means the proportion (expressed as a percentage) of all attempted ACH Debit or RCPO transactions that are returned through the banking system for any reason, whether before or after payment, out of the total number of such attempted transactions, cacluated separately for each type of transaction.

EE.    "**Upselling**" means soliciting the purchase of goods or services following an initial transaction during a single telephone call.

## ORDER

## I.

## PROHIBITION ON PAYMENT LAUNDERING

IT IS ORDERED that Defendants are permanently enjoined from Payment Laundering, whether directly or through an intermediary.

## II.

## PROHIBITION ON VIOLATING THE TELEMARKETING SALES RULE

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from violating any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, attached as Attachment A, including:

A.    Section 310.3(a)(4) of the TSR, 16 C.F.R. § 310.3(a)(4), by making a false or misleading statement to induce any Person to pay for goods or services or to induce a charitable contribution;

B.    Section 310.3(b) of the TSR, 16 C.F.R. § 310.3(b), by providing substantial assistance or support to any Seller or Telemarketer when that person knows or consciously avoids knowing that the Seller or Telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of the TSR; and

C.      Section 310.3(c)(1) of the TSR, 16 C.F.R. § 310.3(c)(1), by presenting to or depositing

into, or causing another to present to or deposit into, the Credit Card System for payment, a Credit

Card Sales Draft generated by a telemarketing transaction that is not the result of a telemarketing

credit card transaction between the cardholder and Merchant.

## III.

## SCREENING OF PROSPECTIVE HIGH RISK CLIENTS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants,

employees, and all other Persons in active concert or participation with any of them, who receive

actual notice of this Order, whether acting directly or indirectly, are permanently restrained and

enjoined from acting as an ISO or Sales Agent for any prospective High Risk Client without first

engaging in a reasonable screening of the prospective High Risk Client to determine whether the

prospective High Risk Client's business practices are, or are likely to be, deceptive or unfair

within the meaning of Section 5 of the FTC Act, or violation of the Telemarketing Sales

Rule.  Such reasonable screening shall include, but not be limited to:

A.      Obtaining from each prospective High Risk Client, including the principal(s) and

controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the entity,

and any corporate name, trade name, fictitious name or aliases under which such Person(s)

conduct or have conducted business:

1.      A description of the nature of the prospective High Risk Client's business,

including describing the nature of the goods and services sold and methods of sale, for

which the prospective High Risk Client seeks Payment Processing services;

2.      Scripts and other marketing materials;

3.     The name of the principal(s) and controlling Person(s) of the entity, and Person(s) with a majority ownership interest in the entity;

4.     A list of all business and trade names, fictitious names, DBAs, and Internet websites under or through which the prospective High Risk Client has marketed or intends to market the goods and services for which the prospective High Risk Client seeks Payment Processing services;

5.     Each physical address at which the prospective High Risk Client has conducted business or will conduct the business(es) identified pursuant to subsection (1) of this Section III A;

6.     The name and address of every Acquirer, originating depository Financial Institution (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions to such prospective High Risk Client), and Payment Processor used by the prospective High Risk Client during the preceding two years, and all merchant identification numbers used by any such banks or Payment Processors in connection with the prospective High Risk Client, and obtaining documents or information from each entity to determine whether the High Risk Client is still using their service, or has been terminated or a contract was not renewed, and the reasons for the termination and non-renewal;

7.     The prospective High Risk Client's past Chargeback Rate and Total Return Rate (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO transactions) for the preceding three (3) months, and estimates of future Chargeback Rates

and Total Return Rates (if Defendant proposes to provide Payment Processing services for
ACH Debit or RCPO transactions);

8.      The names of trade and bank references; and

9.      Whether the prospective High Risk Client, including the principal(s) and
controlling Person(s) of the entity, any Person(s) with a majority ownership interest in the
entity, and any corporate name, trade name, fictitious name or aliases under which such
Person(s) conduct or have conducted business, has ever been:

   a.   placed in a payment card association's chargeback monitoring program during the
   preceding two years; or

   b.   the subject of a complaint filed by the Commission or any other state or federal
   law enforcement agency;

B.      Taking reasonable steps to assess the accuracy of the information provided pursuant to
Section III A of this Order, including but not limited to: reviewing the Internet websites used by
the prospective High Risk Client to market its goods or services; obtaining and reviewing copies
of monthly Payment Processing statements issued by any bank, ISO, Sales Agent, Acquirer, or
Payment Processor used by the High Risk Client during the preceding six (6) months; demanding
all current marketing materials, including Telemarketing scripts, for each good or service related
to the offer for which Defendants would provide the prospective High Risk Client with Payment
Processing, ISO, or Sales Agent services and reviewing such materials, (or, in the case of a High
Risk Client that refuses to confirm the production of all current materials, refusing to provide
Payment Processing or act as an ISO or Sales Agent for the prospective High Risk Client).  The
purpose of such steps is to determine whether the prospective High Risk Client is engaged in any

11

of the following acts or practices, in which case Defendants shall not provide Payment Processing or act as an ISO or Sales Agent for the prospective High Risk Client:

1.      Failing to clearly and conspicuously disclose all products and services that are sold in conjunction with the offered product or service, and the total cost to purchase, receive, or use, any products or services that are the subject of the sales offer;

2.      Misrepresenting any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of the sales offer;

3.      Failing to clearly and conspicuously disclose all material terms and conditions of an offer;

4.      Misrepresenting, expressly or by implication, any material aspect of the prospective High Risk Client's refund, cancellation, exchange, or repurchase policies; and

5.      Causing billing information to be submitted for payment without the customer's express authorization.

## IV.

## MONITORING OF HIGH RISK CLIENTS

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, servants, employees, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with Payment Processing or acting as an ISO or Sales Agent, are permanently restrained and enjoined from:

A.      Failing to monitor the sales activity of all current Clients to identify Clients that should be designated as High Risk Clients requiring additional screening pursuant to Section III of this

order, and for newly-designated High Risk Clients, failing to complete the reasonable screening

process described in Section III of the Order within a one month period;

B.      Failing to monitor each High Risk Client's transactions to determine whether the High

Risk Client is engaged in practices that are deceptive or unfair in violation of Section 5 of the

FTC Act or the TSR.   Such monitoring shall include, but not be limited to:

> 1.      Regularly reviewing High Risk Clients' Internet websites from an IP address that
>
> is not associated with Defendants, High Risk Client's Chargeback Rates, scripts and
>
> marketing materials;
>
> 2.      Regularly reviewing Total Return Rates (if Defendant proposes to provide
>
> Payment Processing services for ACH Debit or RCPO transactions), and Chargeback
>
> Rates and reasons provided for these rates, as well as examining any unusual or suspect
>
> transaction patterns, values, and volume; and
>
> 3.      Regularly obtaining and reviewing scripts and marketing materials.

C.      Failing to calculate and update at least on a monthly basis for each High Risk Client the

Chargeback Rate and Total Return Rate (if Defendant proposes to provide Payment Processing

services for ACH Debit or RCPO transactions).   For any High Risk Client with multiple

processing accounts with the Defendants, the calculation of the Chargeback Rate and Total

Return Rate shall be made for each High Risk Client's individual processing accounts, and in the

aggregate for each High Risk Client;

D.       Failing to immediately conduct a reasonable investigation of the cause of Total Return

Rate (if Defendant proposes to provide Payment Processing services for ACH Debit or RCPO

transactions) or Chargeback Rates (a reasonable investigation includes, but is not limited to:

verifying and updating the truth and accuracy of information gathered in compliance with Section III of this Order and any other advertising of the High Risk Client; confirming that the High Risk Client has obtained required consumer authorizations for the transactions; contacting Financial Institutions and Better Business Bureaus to gather detailed information, including complaints and other relevant information, regarding the High Risk Client; reviewing from an IP address that is not associated with Defendants the Internet websites used by the High Risk Client to market its goods and services; searching publicly available sources for legal actions taken by the Commission or other state or federal law enforcement agencies against the High Risk Client; and conducting "test" shopping to determine the High Risk Client's sales practices, where possible) for:

    1.      Any High Risk Client whose Total Return Rate exceeds two and one-half percent (2.5%) and whose total number of ACH Debit or RCPO returned transactions in any month exceeds forty (40); and

    2.      Any High Risk Client who, in two of the past six months, had (a) a monthly Chargeback Rate in excess of one percent (1%) and (b) more than sixty (60) chargebacks in a month.

E.     Failing to stop processing sales transactions and close all processing accounts for any High Risk Client investigated pursuant to Subsection D, above, within 60 days of commencing the investigation, unless Defendants draft a written report establishing facts that demonstrate, by clear and convincing evidence, that the High Risk Client's business practices related to the offer(s) for which Defendants provide Payment Processing are not deceptive or unfair in violation of Section 5 of the FTC Act and are not in violation of the Telemarketing Sales Rule.

F.      Failing to immediately stop processing sales transactions and close all processing accounts for any High Risk Client that Defendants know or should know is engaged in tactics to avoid fraud and risk monitoring programs established by any Financial Institution, Acquirer, or the operators of any payment system, including, but not limited to, balancing or distributing sales transaction volume or sales transaction activity among multiple Merchant Accounts or merchant billing descriptors; splitting a single sales transaction into multiple smaller transactions, or using shell companies to apply for additional Merchant Accounts.

## V.

## MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.      Judgment is entered in favor of the Commission against RevenueWire and Roberta Leach. Judgment in the amount of **Six Million Seven Hundred Fifty Thousand US Dollars ($6,750,000)** is entered in favor of the Commission against RevenueWire and Roberta Leach, jointly and severally, as equitable monetary relief.

B.      RevenueWire and Roberta Leach are ordered to pay to the Commission by making payment to the Treasurer of the United States**,** in the amount of **Six Million Seven Hundred Fifty Thousand US Dollars ($6,750,000)**, which as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.   Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## VI.

## ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.   If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it

16

determines to be reasonably related to Defendants' practices alleged in the Complaint.   Any

money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.

Defendants have no right to challenge any actions the Commission or its representatives may take

pursuant to this Subsection.

## VII.

## CONSUMER INFORMATION

IT IS FURTHER ORDERED that Defendants, Defendants' officers, agents, employees,

and all other persons in active concert or participation with any of them, who receive actual notice

of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     failing to provide sufficient consumer information to enable the Commission to efficiently

administer consumer redress.   If a representative of the Commission requests in writing any

information related to redress, Defendants must provide it, in the form prescribed by the

Commission, within 14 days.

B.     disclosing, using, or benefitting from consumer information related to any telemarketing

campaign, including the name, address, telephone number, email address, social security number,

other identifying information, or any data that enables access to a consumer's account (including

a credit card, bank account, or other financial account), that any Defendant obtained prior to entry

of this Order; and

C.     failing to destroy such consumer information in all forms in their possession, custody, or

control within 30 days after receipt of written direction to do so from a representative of the

Commission.

*Provided, however*, that consumer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII.

## COOPERATION

IT IS FURTHER ORDERED that the Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint.   Each Defendant must provide truthful and complete information, evidence, and testimony.   Roberta Leach must appear in the United States and Corporate Defendants must cause Defendants' officers, employees, representatives, or agents who agree to appear in the United States for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon ten days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

## IX.

## ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.       Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.       For 5 years after entry of this Order, Defendant Leach for any business that she, individually or collectively with any owner or officer of RevenueWire, is the majority owner or controls directly or indirectly, and RevenueWire must deliver a copy of this Order to:   (1) all

principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for Telemarketing, sales, marketing, or compliance or fraud monitoring and all agents and representatives who participate in Telemarketing, sales, marketing or compliance or fraud monitoring; (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting; and (4) any financial institution, including but not limited to, any acquiring bank, payment processor, payment facilitator, payment gateway, or independent service organization, at which the Corporate Defendant has a corporate account, including a Merchant Account.   Delivery must occur within 7 days of entry of this Order for current personnel.   For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

# X.

## COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.      Each Defendant must:   (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe

the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant Leach must describe if she knows or should know due to her own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Defendant Leach must:   (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which she performs services whether as an employee or otherwise and any entity in which she has any ownership interest; and (c) describe in detail her involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Defendant must report any change in:   (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.      Additionally, Defendant Leach must report any change in:   (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which she performs services whether as an employee or otherwise and

20

any entity in which she has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.       Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.       Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed on:   _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.       Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:   FTC v. RevenueWire, et al.

## XI.

## RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years.   Specifically, RevenueWire and Roberta Leach:

A.      For any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

1.      accounting records showing the revenues from all goods or services sold;

2.      personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

3.      all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

B.      For any business engaged in Payment Processing that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

1.      records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

2.      documents sufficient to show monthly and yearly Chargebacks, Chargeback Rates, Refunds, and Refund Rates for each client or customer to whom any Corporate Defendant provides services; and

3.      all communications and contracts with credit card companies, banks, financial institutions and Payment Processors.

## XII.

## COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.   The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.       For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.   Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.   Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendants pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIII.

## RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes

of construction, modification, and enforcement of this Order.


**SO ORDERED this _____ day of _____, 2020.**


_____

**UNITED STATES DISTRICT JUDGE**


**SO STIPULATED AND AGREED:**


**FOR PLAINTIFF:**
**FEDERAL TRADE COMMISSION**


s/Russell Deitch                                Date:   April 20, 2020
Russell Deitch, Attorney
J. Ronald Brooke, Jr Attorney
Federal Trade Commission
Washington, DC 20580
202-326-2585
202-326-3395
rdeitch@ftc.gov; jbrooke@ftc.gov

**FOR DEFENDANT REVENUEWIRE:**

_____     Date: _Nov 23, 2019_

**COUNSEL FOR DEFENDANT REVENUEWIRE**

_____     Date: _____

**FOR DEFENDANT ROBERTA LEACH:**

_____     Date: _Nov 23, 2019_

**COUNSEL FOR DEFENDANT LEACH**

_____     Date: _____

**FOR DEFENDANT REVENUEWIRE:**

_____     Date: _____

**COUNSEL FOR DEFENDANT REVENUEWIRE**

_____     Date: 11-25-19

**FOR DEFENDANT ROBERTA LEACH:**

_____     Date: _____

**COUNSEL FOR DEFENDANT LEACH**

_____     Date: _____

25

**FOR DEFENDANT REVENUEWIRE:**

_____     Date: _____

**COUNSEL FOR DEFENDANT REVENUEWIRE**

_____     Date: _____

**FOR DEFENDANT ROBERTA LEACH:**

_____     Date: _____

**COUNSEL FOR DEFENDANT LEACH**

_____     Date: 11/22/19

25